JOHN E. PEER – State Bar No. 95978
jpeer@wpdslaw.com
BRIAN W. WALSH – State Bar No. 126483
bwalsh@wpdslaw.com
**WOOLLS PEER DOLLINGER & SCHER**
A Professional Corporation
One Wilshire Building
624 South Grand Avenue, 22nd Floor
Los Angeles, California 90017
Telephone:   (213) 629-1600
Facsimile:    (213) 629-1660

Attorneys for Plaintiff
STAR INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| STAR INSURANCE COMPANY,<br><br>             Plaintiff,<br><br>     v.<br><br>A. LUA TRUCKING, INC.; A LUA WOOD RECYCLING; and SATURNINO FLORES,<br><br>             Defendants, | Case No.:<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

Comes now plaintiff STAR INSURANCE COMPANY, pursuant to Federal Rules of Civil Procedure Rule 57 and 28 U.S.C. § 2201, and alleges against defendants A. Lua Trucking, Inc., A. Lua Wood Recycling, and Saturnino Flores, a nominal defendant, as follows:

## JURISDICTION AND VENUE

1.      This court has original diversity jurisdiction pursuant to 28 U.S.C. § 1332 in that this is a civil action between citizens of different states in which the amount in controversy exceeds $75,000, exclusive of interests and costs.

Woolls Peer Dollinger & Scher
A Professional Corporation
One Wilshire Building, 624 South Grand Avenue, 22nd Floor
Los Angeles, California 90017

2. Venue is proper in this District pursuant to 28 U.S.C. §1391(a)(2), since the insurance policy at issue in this case was issued in this district and the underlying litigation is pending within this district, and a substantial part of the events or omissions giving rise to the claim occurred in this district.

3. The action for declaratory relief is brought pursuant to 28 U.S.C. § 2201(a).

## THE PARTIES

4. STAR INSURANCE COMPANY ("Star") is a corporation domiciled in the State of Michigan with its principle place of business in Southfield, Michigan. Star is and has been authorized to do business in the State of California.

5. Star is informed and believes and thereon alleges that Defendant SATURNINO FLORES ("Flores") is an individual residing in Riverside County, California.

6. Star is informed and believes and thereon alleges that Defendant A. LUA TRUCKING, INC. ("Lua Trucking") is a business organized and existing under the laws of the State of California with its principal place of business in California.

7. Star is informed and believes and thereon alleges that Defendant A. LUA WOOD RECYCLING ("Lua Wood Recycling") is a business organized and existing under the laws of the State of California with its principal place of business in California.

8. Star is informed and believes and thereon alleges that in an Underlying Action referred to below "A. Lua Recycling, Inc." was improperly named as a defendant because no such entity exists.

## GENERAL ALLEGATIONS

9. Underlying claimant Flores alleges that on or about March 9, 2018, while on the premises located at 18938 Mermack Avenue, Lake Elsinore, California, he was injured while unloading debris from an auto driven by Miguel Barreto. Barreto was a co-employee of Flores working on behalf of Lakeside Services Landscape Company

Woolls Peer Dollinger & Scher
A Professional Corporation
One Wilshire Building, 624 South Grand Avenue, 22nd Floor
Los Angeles, California 90017

2

at the time of the accident.

10.    On or about August 14, 2019, Flores filed a lawsuit in Riverside County Superior Court, which is currently pending as action no. RIC 1904255 (the "Underlying Action"). Flores named as defendants in the Underlying Action Lua Wood Recycling, and Miguel Barreto, as well as A. Lua Recycling, Inc.. Lua Trucking was not named as a defendant.  The Lua defendants in the Underlying Action were sued based on a theory of premises liability and negligent property maintenance.  Miguel Barreto is sued based on the negligent operation of the auto involved in the accident causing Mr. Flores' injuries.

11.    Lua Wood Recycling tendered the Flores lawsuit to Star under Policy No. CP0329487 (the "Star Policy") seeking a defense and indemnity.  On November 18, 2019, Star agreed to defend Lua Wood Recycling  under a reservation of rights.  A true and correct copy of the reservation of rights letter is attached hereto as Exhibit 1.

12.    The Star Policy issued to Lua Trucking was in effect from September 27, 2017 to September 27, 2018.  A true and correct copy of the Star Policy is attached hereto as Exhibit 2.

13.    The Star Policy contained an "Aircraft, Auto or Watercraft" exclusion as Exclusion (g).  That exclusion eliminates coverage for:

> (g.) 'Bodily injury' or 'property damage' arising out of the ownership, maintenance , use, or entrustment to others of any aircraft, 'auto' or watercraft owned or operated  by or rented or loaned to any insured.  Use includes operation and 'loading or unloading'.

The Star Policy was endorsed, however, with form no. 45 84 GL (04/07), titled "Absolute Auto, Aircraft and Watercraft Exclusion" which endorsement modifies insurance provided  under the Commercial General Liability Coverage Part by deleting Exclusion (g), as quoted above, replacing it with the following:

> 'Bodily injury' or 'property damage' arising out of or resulting from the  ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft.  Use includes operation and 'loading and unloading'.

3

Woolls Peer Dollinger & Scher
A Professional Corporation
One Wilshire Building, 624 South Grand Avenue, 22nd Floor
Los Angeles, California 90017

[CASE NO.:]
[COMPLAINT]

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage' involved the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft.

The Star Policy defines "auto" to include a land motor vehicle.

14.    The Star Policy was issued to A. Lua Trucking, Inc., showing an address of 18938 Mermack Avenue, Lake Elsinore, CA, which is the same address where Flores claims to have been injured. Lua Trucking was not named in the Flores Underlying Action.

15.  Lua Wood Recycling is not identified as an insured under the Star Policy. (Neither does the policy identify "A. Lua Recycling, Inc." as an insured.)

16.    The Star  Policy's "Who is an Insured" provision extends insured status to the  executive officers and directors, as well as stockholders of  Lua Trucking, but only in their capacities, as such.  The policy attaches an Additional Insured Endorsement which adds: "Five A's" and "Alberto and Amelia Lua" as additional insureds for an easement "in connection with premises owned by you."

## FIRST CAUSE OF ACTION

### (Declaratory Relief re: No Duty to Defend)

17.    Plaintiff incorporates by reference paragraphs 1 through 16 as if set forth fully herein.

18.    Star contends there was no duty to defend Lua Wood Recycling for the Underlying Action under the Star Policy. Star contends as follows:

- Star has no obligation to defend Lua Wood Recycling as the  titled "Absolute Auto, Aircraft and Watercraft Exclusion" bars coverage;

- Star has no obligation to defend Lua Wood Recycling as it does not qualify as insureds under the Star Policy.

19.    Star is informed and believes, and on that basis alleges, that Lua Wood

Woolls Peer Dollinger & Scher
A Professional Corporation
One Wilshire Building, 624 South Grand Avenue, 22nd Floor
Los Angeles, California 90017

4

Recycling disputes Star's contentions. An actual controversy has arisen and now exists between Star and Lua Wood Recycling as to whether Star owes a duty to defend Lua Wood recycling in the Underlying Action under the Star Policy.

20.     Star has named Flores as a nominal defendant in this lawsuit so that he is bound by the judicial determination sought by Star as to the availability of insurance coverage for the Underlying Action.

21.     Star requests the court make and enter binding judicial declarations in accordance with Star's contentions set forth above. The requested declarations are both necessary and proper at this time in that the interests of judicial economy and substantial justice will be served thereby.

## SECOND CAUSE OF ACTION

### (Declaratory Relief re:

### No Duty to Indemnify)

22.     Plaintiff incorporates by reference paragraphs 1 through 21 as if set forth fully herein.

23.     Star contends there is no actual coverage for the claims at issue or the damages sought for the Underlying Action under the Star Policy. Star contends as follows:

- Star has no obligation to defend Lua Wood Recycling as the titled "Absolute Auto, Aircraft and Watercraft Exclusion" bars coverage;

- Star has no obligation to defend Lua Wood Recycling as it does not qualify as an insured under the Star Policy.

24.     Star is informed and believes, and on that basis alleges, that Lua Wood Recycling disputes Star's contentions. An actual controversy has arisen and now exists between Star and Lua Wood Recycling as to whether Star owes a duty to indemnify Lua Wood Recycling for the Underlying Action under the Star Policy.

25.     Star has named Flores as a nominal defendant in this lawsuit so that he is bound by the judicial determination sought by Star as to the availability of insurance

Woolls Peer Dollinger & Scher
A Professional Corporation
One Wilshire Building, 624 South Grand Avenue, 22nd Floor
Los Angeles, California 90017

5

coverage for the Underlying Action.

26.    Star requests the court make and enter binding judicial declarations in accordance with Star's contentions set forth above. The requested declarations are both necessary and proper at this time in that the interests of judicial economy and substantial justice will be served thereby.

## **PRAYER FOR RELIEF**

WHEREFORE, Star prays for judgment as follows:

1.    On the First Cause of Action, that the Court make and enter binding judicial declaration that there was no obligation to pay defense costs to or on behalf of Lua Wood Recycling for the Underlying Action under the Star Policy;

2.    On the Second Cause of Action, that the Court make and enter a binding judicial declaration that there was no actual coverage under the Star Policy for all or part of the Underlying Action;

3.    For Star's costs of suit;

4.    For such other and further relief as the court deems just and proper.

DATED: July 14, 2020                    WOOLLS PEER DOLLINGER & SCHER
                                        A Professional Corporation

                                        /s/ John E. Peer
                                        _____
                                        JOHN E. PEER
                                        Attorneys for Plaintiff
                                        STAR INSURANCE COMPANY

Woolls Peer Dollinger & Scher
A Professional Corporation
One Wilshire Building, 624 South Grand Avenue, 22nd Floor
Los Angeles, California 90017

756982.1

[CASE NO.:]
[COMPLAINT]

# Exhibit 1



# Exhibit 1

     

November 18, 2019

Via certified and regular mail
**9489 0090 0027 6126 1046 28**

Ms. Amelia Lua
A. Lua Trucking
18938 Mermack Avenue
Lake Elsinore, CA 92532

Re:   ***Flores v. A. Lua Recycling, et al.***
Riverside County Superior Court Action No. RIC 1904255
Our Claim No.:   GLWM19006223

## Reservation of Rights

Dear Ms. Lua:

I am the Litigation Specialist for Meadowbrook Inc., assigned on behalf of Star Insurance Company ("Star") to oversee Saturnino Flores' claim and lawsuit against certain Lua entities.  Star previously acknowledged receipt of your correspondence dated September 10, 2019, seeking a defense and indemnity for the above-referenced lawsuit.  After careful consideration, Star has determined that it will provide A. Lua Recycling and A. Lua Wood Recycling with a defense in the above-referenced action pursuant to the following reservation of rights, pending receipt of information relating to the relationship between the various Lua entities. Star is affording this defense while it conducts its investigation of potential coverage issues. Please promptly notify us if A. Lua Trucking, Inc. is named as a defendant in the *Flores* action.

Star has appointed attorney Mary Campo, of the law firm of Hosp, Gilbert, Bergsten as defense counsel in the litigation. Her telephone number is (626) 792-2400. Email is mcampo@hosplaw.com.  Ms. Campo will be in touch with you shortly, and we ask that you provide full cooperation to her.

We also request that you advise us of any other insurance which may be available to respond to this claim. If you have tendered the *Flores* lawsuit to any other carrier, please provide any responses from other insurers.

The remainder of this correspondence discusses potential areas of non-coverage under the Star policy. We begin with a short summary of our understanding of the key background facts and an overview of relevant policy provisions before discussing the coverage issues raised by the *Flores* lawsuit.


## I.   Factual Background

This loss arises from an incident that occurred on March 9, 2018 on the premises which we understand is owned by A. Lua Trucking, Inc., in Lake Elsinore, California.  We understand that a wood recycling operation also was conducted on the property but, as discussed below, we are unclear as to who operated the recycling operation and the relationship between A. Lua Trucking, Inc., A. Lua Recycling, and A. Lua Wood Recycling.

**Richard Blair**
**Litigation Specialist**
**Rick.Blair@AmeriTrustGroup.com**
**Mailing Address: P.O. Box 219559 Kansas City, MO 64121-9559**
**Phone: 800-825-9489  Fax: 614-895-7040  Direct Line: 602-445-5946**

Saturnino Flores filed the above-referenced complaint alleging he was injured while on the premises at 18938 Mermack Avenue to unload debris/wood. Specifically, Mr. Flores alleges that, at the time of the accident, he was in the course and scope of his employment by Lakeside Services Landscape Company, a gardening/landscape company, and was unloading materials at an A. Lua Wood Recycling facility located at 18938 Mermack, Avenue, Lake Elsinore, CA. While Mr. Flores was unloading material, Mr. Flores alleges that Miguel Barreto affixed a rope and hook-like device between the debris in the back of Mr. Barreto's truck and a large cement block that was placed on the ground. The idea apparently was that a driver would pull the truck away and a rope attached to the debris in the bed of the truck and to a large cement block would drag the debris out of back of the truck. Mr. Flores alleges that Mr. Barreto pulled away too quickly and the cement block to which the rope was attached was pulled onto Mr. Flores' leg, causing his leg to fracture.

Mr. Flores' complaint, filed on August 14, 2019, names A. Lua Recycling, Inc., A. Lua Wood Recycling, and Miguel Barreto as defendants. A. Lua Trucking, Inc. has not been named as a defendant. The complaint alleges premises liability and negligence in maintaining the property as against A. Lua Wood Recycling and A. Lua Recycling, Inc., and negligent operation of the truck by Mr. Barreto.

We understand you were unaware of the subject incident until you were served with Mr. Flores' lawsuit.

## II.    STAR'S COVERAGE

Star Insurance Company issued primary general liability coverage to A. Lua Trucking, Inc. under policy no. CP0329487, which was in place between September 27, 2017 and September 27, 2018. Star's policy affords limits of liability of $1 million per occurrence, subject to a $2 million General Aggregate.

In relevant part, the Star policy's Commercial General Liability Coverage Form CG 0001 1207 provides, as follows:

> **SECTION I – COVERAGES**
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **1.  Insuring Agreement**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, ta our discretion, investigate any "occurrence" and settle any claim or "suit that may result. But:
>
> **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and
>
> **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.
> No other obligation or liability to pay sums or perform act or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.
>
> **b.** This insurance applies to "bodily injury" and "property damage" only if:
>
> **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> **(2)** The "bodily injury" or "property damage" occurs during the policy period...
>
> . . .

Star's policy deletes Exclusion (g) (an Auto, Aircraft and Watercraft exclusion contained in the standard Commercial General Liability Coverage Form CG 0001 1207 portion of the policy) and replaces it with the following

exclusion by separate endorsement – Absolute Auto, Aircraft and Watercraft Exclusion 4584 GL 0407, which precludes coverage for:

> "Bodily injury" or "property damage" arising out of or resulting from the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft. Use includes operation and 'loading and unloading'.

> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft.

The policy defines "auto" within the main Commercial General Liability Coverage Form CG 0001 1207 to include a land motor vehicle, which would include the Toyota truck involved in this loss.

The policy's "Who Is An Insured" provision is also contained in the Commercial General Liability Coverage Form CG 0001 1207 and provides that, if the named insured is a corporation, which is the case with A. Lua Trucking, Inc., A. Lua Trucking, Inc., as well as the following are insureds:

> **SECTION II – WHO IS AN INSURED**
> 1. If you are designated in the Declarations as:
> . . . .
>> d. An organization other than a partnership, joint venture, or limited liability company, you [A. Lua Trucking, Inc.] are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stock-holders are also insureds, but only with respect to their liability as stockholders.

The policy attaches an Additional Insured – Designated Person or Organization endorsement CG 2026 0704 that adds: "Five A's" and "Alberto and Amelia Lua" as additional insureds for an easement "in connection with premises owned by you."

## III.    **COVERAGE DISCUSSION**

### A.    **Named Insured Issue**

The policy was issued to A. Lua Trucking, Inc., showing an address of 18938 Mermack Avenue, Lake Elsinore, CA, which is the same address where Mr. Flores claims to have been injured. The Declarations page of Star's policy identifies the covered business as "Truckers For Hire", but the classification codes noted on the Declarations page relate to "Nursery-Garden", as well as "Truckers". A. Lua Trucking, Inc. is not named as a defendant in the *Flores* litigation, and the question is whether A. Lua Recycling, Inc. or A. Lua Wood Recycling are entitled to coverage under the Star policy.

As quoted above, the Star policy is written subject to the terms and conditions of form CG 00 01 (12/07), which includes a definition of who qualifies as an insured under the policy. Specifically, the policy's "Who is an Insured" provision extends insured status to the corporation's executive officers and directors, as well as stockholders, but only in their capacities, as such.[1] The policy attaches an Additional Insured Endorsement that adds: "Five A's" and "Alberto and Amelia Lua" as additional insureds for an easement "in connection with premises owned by you."

As discussed herein, Star will defend the Lua Defendants in Mr. Flores' lawsuit, subject to a reservation of rights and confirmation as to the relationship between A. Lua Trucking, A. Lua Recycling, A Lua Wood Recycling, Five A's, and Alberto and Amelia Lua, including their business organization status (where applicable) and ownership

---

[1] The California Secretary of State's website confirms A. Lua Trucking, Inc. is incorporated in California.

Page 4 of 6

interest in the property at 18938 Mermack Avenue, Lake Elsinore, CA. <u>Star would appreciate your providing this information directly to my attention at your earliest opportunity</u>.

### B.   Auto Exclusion Issue

A second coverage issue relates to the application of the auto exclusion. Exclusion (g) under Coverage A of the standard ISO form (CG 0001 (12/07) provides an "Aircraft, Auto or Watercraft" exclusion that eliminated coverage for:

> (g.) "Bodily injury" or "property damage" arising out of the ownership, maintenance use, or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

> Importantly, Star's policy was endorsed with form no. 45 84 GL (04/07), titled "Absolute Auto, Aircraft and Watercraft Exclusion", which deleted the above-quoted exclusion replaced it with the following:

> "Bodily injury" or "property damage" arising out of or resulting from the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft. Use includes operation and 'loading and unloading'.

> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft.

The effect of this change in the Absolute Auto exclusion is to preclude insurance coverage for claims of bodily injury or property damage which arise from the use of an auto, regardless of whether the auto in question was owned, operated or in the custody or control of an insured under Star's policy.

## IV.   RESERVATION OF RIGHTS

As noted, we request and await confirmation from you as to the relationship between A. Lua Trucking, Inc., A. Lua Recycling, A. Lua Wood Recycling, Five A's, and Alberto and Amelia Lua, including ownership of the property located at 18938 Mermack Avenue, Lake Elsinore, CA.

Although A. Lua Trucking, Star's named insured, has not been named in Mr. Flores' lawsuit, A. Lua Recycling and A. Lua Wood Recycling have been named and Star agrees to defend those Lua entities while it conducts its coverage investigation. Once we have been provided with the above-requested information, Star will revisit its agreement to provide a defense. If Mr. Flores' complaint is amended to name A. Lua Trucking, Inc. as a defendant, we ask that you promptly notify us and Star will respond.

Please be advised that Star's agreement to defend is provided under a reservation of rights and Star expressly reserves its right to supplement, amend or disclaim coverage, if warranted. Also, be advised that Star believes that the Absolute Auto exclusion, discussed above, may entirely preclude coverage for this loss and Star reserves its right to assert the exclusion and to seek a judicial determination as to its applicability by way of a Declaratory Judgment lawsuit.

## V.   CONCLUSION

Based on the foregoing, Star agrees to defend A. Lua Recycling and A. Lua Wood Recycling in the *Flores* action pursuant to this reservation of rights. If A. Lua Trucking is named in the lawsuit, we ask that you advise us immediately.

Page 5 of 6

If you or any of the Lua-related entities have other potentially available insurance coverage for this loss, we ask that you promptly provide us with information regarding that coverage and if this matter has been tendered to any other insurer, and their response(s).

Please cooperate fully with Ms. Campo in the defense of this claim. Pursuant to *Buss v. Superior Court*, Star reserves the right to seek to recover any amount it pays that can be allocated to uncovered claims, including both defense expenses and indemnity payments made by Star. Star further reserves the right to seek a judicial declaration of its rights under the policy, including with respect to the Absolute Auto Exclusion. Finally, Star reserves the right to withdraw from defending any Lua-related entity should it be determined there is no potential for the recovery of damages covered by the Star policy.

Star's actions in defending, investigating, evaluating, and/or monitoring this matter should not be construed as a waiver, estoppel, or other relinquishment of Star's right to limit or deny coverage at any later date, nor as an admission of any obligation under the Star policy. There may be other reasons why coverage does not apply. Star does not intend to waive any rights that it might have under the policy or the applicable law. None of the actions of Star, its agents, attorneys or employees should be construed as a waiver of any rights that Star may have nor should Star be estopped by its conduct to assert any defenses it may have. Similarly, no conduct by Star should be construed as a waiver or surrender of any of the policy's limitations, exclusions, conditions, or agreements. Star specifically reserves its rights to raise additional or alternate coverage defenses and to rely on any additional facts, policy provisions, or other relevant information that may affect coverage to alter its position in the future. Star's references to certain policy provisions in this correspondence should thus not be construed as a waiver of Star's rights to rely on any other policy provisions or the applicable law.

Star is committed to the prompt and fair handling of all claims for coverage. If you believe we have erred in the handling of this claim, you may have the matter reviewed by the California Department of Insurance. The California Department of Insurance may be contacted by calling (800) 927-HELP, or by writing to the Department at this address:

> California Department of Insurance
> Claims Services Bureau
> 300 South Spring Street, 11th Floor
> Los Angeles, California 90013

Star trusts that you understand its coverage position, but if you have any questions or comments, please do not hesitate to contact us. Further, if you believe we have omitted any relevant information or if you are aware of, or become aware of, any additional information that you believe may affect Star's coverage position, please contact us immediately. Star is prepared to consider additional information and to reassess its position should the circumstances so warrant.

Very truly yours,

**STAR INSURANCE COMPANY**

Rick Blair
Litigation Specialist

cc:    Interline Insurance Services, Inc.
       Commercial Carriers Insurance Agency, Inc.
       4 Centerpointe Drive, Suite 300
       La Palma, CA 90623

Received: 12/12/2013 10:08:95 AM Batch: #8134485

Page **6** of **6**

Hosp Gilbert & Bergsten
301 N Lake Avenue #410
Pasadena CA  91101

| WARNING |
|---|
| "Any person who knowingly and with intent to defraud any insurance company files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties." |
| Revised 01/2013 |

# Exhibit 2



# Exhibit 2

# COMMERCIAL LINES POLICY



**26255 American Drive**
**Southfield, MI  48034**
**(800) 482-2726 or (248) 358-1100**

JCL 00 01 12 04

## Privacy Statement

In applying for insurance products and services with Meadowbrook Insurance Group, Inc.'s subsidiaries, you may have provided us with non-public personal information. Additionally, we may seek additional information, such as your creditworthiness or credit history, from third party reporting agencies. This information allows us to provide you with the best products and customer service. Keeping your personal information private and secure, whether learned directly from you or a third party reporting agency, is our priority.

The categories of non-public personal and financial information that we collect may include your name, address, social security or employer identification number, assets, income, date of birth, motor vehicle driving information and other information that is appropriate or necessary to provide you with the insurance products and services that you request.

We do not disclose any non-public personal or financial information about you, unless permitted or required by law or with your consent.

We may have shared this information with affiliated parties as permitted by law. We refer to and use that information to issue and service your insurance policies, provide insurance services or administer claims. We restrict access to your non-public personal and financial information to those employees who need the information to provide you with products or services.

We maintain physical, electronic and procedural safeguards to protect your non-public personal and financial information. These safeguards comply with federal and state regulations.

If you contact us at our website, "www.meadowbrook.com" we do not use "cookies," which many organizations use to track visitors' actions on their web sites. Cookies are a general mechanism that can store and retrieve information on your computer.

We value the relationship that we have established with current and former customers. Should you have any comments or questions regarding our Privacy Policy, please contact us at 800-482-2726.

This Privacy Policy applies to the following companies: (1) Meadowbrook Insurance Group, Inc.'s insurance company subsidiaries (Star Insurance Company, Ameritrust Insurance Corporation, Savers Property & Casualty Insurance Company, Williamsburg National Insurance Company, ProCentury Insurance Company, and Century Surety Company); (2) Crest Financial Corporation's subsidiaries; and (3) Meadowbrook, Inc.'s subsidiaries.



**Safety**surance ™
BY MEADOWBROOK INSURANCE GROUP ℠

**Now available online!**

www.safetysurance.com



**Safetysurance is an evolutionary**
*Risk Management Platform* **containing a**
**searchable library of resources, including:**

- Safety Brochures
- Safety Talks and Meeting Topics
- Safety Resources and Solution Providers
- Live Streaming Safety Training Videos
- Safety Posters and Checklists
- Industry News and Regulatory Updates
- Safety Plans and Programs

*(Options available in Spanish)*

**As a valued Policyholder, Agent Partner, or Employee,**
**Safetysurance is available to you – FREE of charge.**

1. It's easy – just go to **www.safetysurance.com**
2. Register by using your:
   - Policy # – If you are a policyholder
   - Agent ID # (Which is your Federal ID #) – If you are an agent
   - Employee email address – If you are a Meadowbrook employee
3. Then, login using your newly created Login Name and Password

## Features

**News & RSS Feeds**

- Keep up with industry trends, changes, and activity. News feeds are aggregated and updated weekly from a variety of industry resources.

**Safety Highlights**

- Focus on current safety issues within your industry. Topics include current industry loss trends, seasonal concerns, and other related items.

**Key Issues**

- Helps to identify key industry loss drivers and quickly provides safety resources to address these issues.

**Reference Links**

- Easily access Federal, State, and other regulatory links in the aggregated resource links library.

Edition: 10/13

If you have questions, or need assistance creating your account, please
contact us directly at: **safetysurance@meadowbrook.com** or call **(855) 686-1691**



## INJURY REPORTING PROCEDURES

**Please report all claims immediately to:**

## CUSTOMER SERVICE CENTER
## 800.825.9489

- **Report by Phone**
  Please have your policy number and name of insured/policyholder listed as named insured on your insurance policy.

- **Report by Fax or Email**
  Fax or email the completed ACORD claim form to the following:

  **FAX:   800-832-8793**
  **E-Mail:  newclaim@meadowbrook.com**
  **Website:  www.meadowbrook.com**

  **If using a "smartphone", you may scan the QR code below and be connected to the Service Center.**



Edition 7/2013

# POLICYHOLDER DISCLOSURE
# NOTICE TERRORISM INSURANCE COVERAGE
## ELECTION - REJECTION

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, you have a right to purchase insurance coverage for losses arising out of acts of terrorism, *as defined in Section 102(1) of the Act:* The term "act of terrorism" means any act that is certified by the Secretary of the Treasury in accordance with the provisions of the federal Terrorism Risk Insurance Act – to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property; or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT COVERAGE PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES THE PERCENTAGE SHOWN BELOW OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

1. Insured Losses would be partially reimbursed by the United States Government. If the aggregate industry Insured Losses exceed:

   a. $100,000,000, with respect to such Insured Losses occurring in calendar year 2015, the United States Government would pay 85% of our Insured Losses that exceed our Insurer Deductible.

   b. $120,000,000, with respect to such Insured Losses occurring in calendar year 2016, the United States Government would pay 84% of our Insured Losses that exceed our Insurer Deductible.

   c. $140,000,000, with respect to such Insured Losses occurring in calendar year 2017, the United States Government would pay 83% of our Insured Losses that exceed our Insurer Deductible.

   d. $160,000,000, with respect to such Insured Losses occurring in calendar year 2018, the United States Government would pay 82% of our Insured Losses that exceed our Insurer Deductible.

   e. $180,000,000, with respect to such Insured Losses occurring in calendar year 2019, the United States Government would pay 81% of our Insured Losses that exceed our Insurer Deductible.

   f. $200,000,000, with respect to such Insured Losses occurring in calendar year 2020, the United States Government would pay 80% of our Insured Losses that exceed our Insurer Deductible.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U. S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURER'S LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF

SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

**Acceptance or Rejection of Terrorism Insurance Coverage**

| | |
|---|---|
| ☒ | I hereby **elect** to purchase Terrorism coverage for a prospective premium of $3.00 . |
| ☐ | I hereby **decline** to purchase terrorism coverage for certified acts of terrorism. I understand that I will have no coverage for losses resulting from certified acts of terrorism. |

_____
Policyholder/Applicant's Signature

_____
Print Name

_____
Date

STAR INSURANCE COMPANY
_____
Insurance Company

CP0329487
_____
Policy Number

STAR INSURANCE COMPANY

# CALIFORNIA IMPORTANT NOTICE

To obtain information or make a complaint you may contact Star Insurance at the address and toll-free telephone number below for information or to make a complaint at:

**Star Insurance Company**
**4 Centerpointe Dr. – Suite # 300**
**La Palma, CA  90623**
**1-562-926-6163**
**Fax: 1-562-685-0192**

You may also contact the California Department of Insurance to obtain information on companies, coverages, rights or complaints at:

**Consumer Service Division**
**California Department of Insurance**
**45 Fremont Street, 22nd Floor**
**San Francisco, California 94105**
**1-800-927-HELP (4357)**
**Out-of-state callers: 213-897-8921**
**TDD: 800-482-4TDD (4833)**

## PREMIUM OR CLAIM DISPUTES:

Should you have a dispute concerning your premium, or about a claim, the California Department of Insurance should only be contacted after you have had discussion with the company first, or the company's agent or broker, and if such discussion has failed to produce a satisfactory resolution to the problem. If the dispute is not so resolved, you may then contact the California Department of Insurance at the address and telephone numbers shown above.

## ATTACH THIS NOTICE TO YOUR POLICY:

This notice is for information only and does not become a part or condition of the attached policy.

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

© ISO Properties, Inc., 2004

# STAR INSURANCE COMPANY

## 26255 American Drive  Southfield, MI 48034-6112

## COMMERCIAL LINES POLICY
## COMMON POLICY DECLARATIONS

Renewal of Number: CP0329487

**Policy No.**  CP0329487

Named Insured and Mailing Address (No., Street, Town or City, County, State, Zip Code)
A. Lua Trucking, Inc.
18938 Mermack
Lake Elsinore, CA 92532

Policy Period:  From 09/27/2017 to 09/27/2018 _____ at 12:01 A.M. Standard Time at your mailing address shown above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

AUDIT PERIOD (if applicable)   ☐ ANNUALLY   ☐ QUARTERLY   ☐ SEMI-ANNUALLY   ☐ MONTHLY

| | PREMIUM |
|---|---|
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | $708.00 |
| COMMERCIAL INLAND MARINE COVERAGE PART | $239.00 |
| TERRORISM - CERTIFIED ACTS (GENERAL LIABILITY) | $3.00 |
| TERRORISM - CERTIFIED ACTS (INLAND MARINE) | $0.00 |
| **TOTAL:** | $950.00 |

Premium shown is payable:$ _____ at inception; $ _____ 1st Anniversary;$ _____ 2nd Anniversary

Form(s) and Endorsement(s) made a part of this policy at time of issue*:
See Attached Listing of Forms and Endorsements.

*Omits applicable Forms and Endorsements if shown in specific Coverage Part/Coverage Form Declarations.

Countersigned: _____   By _____
                                                       Authorized Representative

Agent License No.: _____

Interline Insurance Serv. Inc, P.O. Box 3190, 12641 E. 166th St., Cerritos, CA 90703-3190 (800)229-8790

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART COVERAGE FORM(S) AND FORMS AND ENDORSEMENT, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

20 15 ML 06 98

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

Page 1 of 2

Original

# LISTING OF FORMS AND ENDORSEMENTS FORMING
# A PART OF THIS POLICY

POLICY NUMBER:

**NUMBER**                    **TITLE**

### COMMON

| | |
|---|---|
| 20 15 ML (06-98) | Common Policy Declarations |
| IL 00 17 (11-98) | Common Policy Conditions |
| IL 00 21 (09-08) | Nuclear Energy Liability Exclusion Endorsement (Broad Form) |
| IL 01 04 (02-04) | California Changes |
| IL 02 70 (09-12) | California Changes - Cancellation And Nonrenewal |
| IL 09 35 (07-02) | Exclusion Of Certain Computer-Related Losses |
| IL 09 52 (01-15) | Cap on Losses from Certified Acts of Terrorism |
| IL 09 85 (01-15) | Disclosure Pursuant To Terrorism Risk Insurance Act |

### GENERAL LIABILITY

| | |
|---|---|
| 20 14 GL (01-01) | Commercial General Liability Declarations |
| 32 34 GL (09-97) | Exclusion - Asbestos |
| 45 84 GL (04-07) | Absolute Auto, Aircraft and Watercraft Exclusion |
| CG 00 01 (12-07) | Commercial General Liability Coverage Form |
| CG 20 26 (07-04) | Additional Insured - Designated Person Or Organization |
| CG 21 06 (05-14) | Exclusion - Access Or Disclosure Of Confidential Or Personal Information And Data-Related Liability - With Limited Bodily Injury Exception |
| CG 21 67 (12-04) | Fungi or Bacteria Exclusion |
| CG 21 71 (01-15) | Exclusion Of Other Acts Of Terrorism Committed Outside The United States; Cap on Losses From Certified Acts of Terrorism |
| CG 21 76 (01-15) | Exclusion of Punitive Damages Related to a Certified Act of Terrorism |
| CG 32 34 (01-05) | California Changes |

### INLAND MARINE

| | |
|---|---|
| 26 26 IM (12-04) | Commercial Inland Marine Declarations |
| 20 98 CM (12-98) | Contractors Equipment Coverage - Declarations |
| 02 07 CM (01-95) | Contractors' Equipment Coverage Form |
| 29 56 CM (12-98) | Valuation Changes |
| 44 54 IM (11-04) | Loss Payable Endorsement |

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

**IL 00 17 11 98**

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

---

**IL 00 17 11 98**          Copyright, Insurance Services Office, Inc.,  1998          **Page 1 of 1**   □

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

IL 01 04 02 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART – FARM PROPERTY – OTHER FARM PROVISIONS FORM – ADDITIONAL
COVERAGES, CONDITIONS, DEFINITIONS
FARM COVERAGE PART – LIVESTOCK COVERAGE FORM
FARM COVERAGE PART – MOBILE AGRICULTURAL MACHINERY AND EQUIPMENT COVERAGE FORM
STANDARD PROPERTY POLICY

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** The **Concealment, Misrepresentation Or Fraud** Condition is replaced by the following with respect to loss ("loss") or damage caused by fire:

We do not provide coverage to the insured ("insured") who, whether before or after a loss ("loss"), has committed fraud or intentionally concealed or misrepresented any material fact or circumstance concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** That insured's ("insured's") interest in the Covered Property; or

**4.** A claim under this Coverage Part or Coverage Form.

**C.** The **Concealment, Misrepresentation Or Fraud** Condition is replaced by the following with respect to loss ("loss") or damage caused by a Covered Cause of Loss other than fire:

This Coverage Part is void if any insured ("insured"), whether before or after a loss ("loss"), has committed fraud or intentionally concealed or misrepresented any material fact or circumstance concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** An insured's ("insured's") interest in the Covered Property; or

**4.** A claim under this Coverage Part or Coverage Form.

**D.** Except as provided in **E.,** the **Appraisal** Condition is replaced by the following:

If we and you disagree on the value of the property or the amount of loss ("loss"), either may make written request for an appraisal of the loss ("loss"). If the request is accepted, each party will select a competent and impartial appraiser. Each party shall notify the other of the appraiser selected within 20 days of the request. The two appraisers will select an umpire. If they cannot agree within 15 days, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss ("loss"). If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**1.** Pay its chosen appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**E.** The Appraisal Condition in:

**1.** Business Income (And Extra Expense) Coverage Form **CP 00 30;** and

**2.** Business Income (Without Extra Expense) Coverage Form **CP 00 32;**

is replaced by the following:

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written request for an appraisal of the loss. If the request is accepted, each party will select a competent and impartial appraiser. Each party shall notify the other of the appraiser selected within 20 days of the request. The two appraisers will select an umpire. If they cannot agree within 15 days, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

© ISO Properties, Inc.,  2003            **IL 01 04 02 04**    □

IL 02 70 09 12

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **2.** and **3.** of the **Cancellation** Common Policy Condition are replaced by the following:

**2. All Policies In Effect For 60 Days Or Less**

If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

**a.** 10 days before the effective date of cancellation if we cancel for:

**(1)** Nonpayment of premium; or

**(2)** Discovery of fraud by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3. All Policies In Effect For More Than 60 Days**

**a.** If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

**(1)** Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

**(2)** Discovery of fraud or material misrepresentation by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**(3)** A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

**(4)** Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

**(5)** Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

**(6)** A determination by the Commissioner of Insurance that the:

**(a)** Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

**(b)** Continuation of the policy coverage would:

**(i)** Place us in violation of California law or the laws of the state where we are domiciled; or

**(ii)** Threaten our solvency.

**(7)** A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

**b.** We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph **3.a.**

**B.** The following provision is added to the **Cancellation** Common Policy Condition:

**7. Residential Property**

This provision applies to coverage on real property which is used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household personal property in a residential unit, if such coverage is written under one of the following:

Commercial Property Coverage Part

Farm Coverage Part – Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

**a.** If such coverage has been in effect for 60 days or less, and is not a renewal of coverage we previously issued, we may cancel this coverage for any reason, except as provided in **b.** and **c.** below.

**b.** We may not cancel this policy solely because the first Named Insured has:

**(1)** Accepted an offer of earthquake coverage; or

**(2)** Cancelled or did not renew a policy issued by the California Earthquake Authority (CEA) that included an earthquake policy premium surcharge.

However, we shall cancel this policy if the first Named Insured has accepted a new or renewal policy issued by the CEA that includes an earthquake policy premium surcharge but fails to pay the earthquake policy premium surcharge authorized by the CEA.

**c.** We may not cancel such coverage solely because corrosive soil conditions exist on the premises. This restriction **(c.)** applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

**(1)** Commercial Property Coverage Part – Causes Of Loss – Special Form; or

**(2)** Farm Coverage Part – Causes Of Loss Form – Farm Property, Paragraph **D.** Covered Causes Of Loss – Special.

© Insurance Services Office, Inc., 2012

C. The following is added and supersedes any provisions to the contrary:

**Nonrenewal**

1. Subject to the provisions of Paragraphs **C.2.** and **C.3.** below, if we elect not to renew this policy, we will mail or deliver written notice, stating the reason for nonrenewal, to the first Named Insured shown in the Declarations, and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

   We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

2. **Residential Property**

   This provision applies to coverage on real property used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household property contained in a residential unit, if such coverage is written under one of the following:

   Commercial Property Coverage Part

   Farm Coverage Part – Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

   a. We may elect not to renew such coverage for any reason, except as provided in **b., c.** and **d.** below.

   b. We will not refuse to renew such coverage solely because the first Named Insured has accepted an offer of earthquake coverage.

      However, the following applies only to insurers who are associate participating insurers as established by Cal. Ins. Code Section 10089.16. We may elect not to renew such coverage after the first Named Insured has accepted an offer of earthquake coverage, if one or more of the following reasons applies:

      (1) The nonrenewal is based on sound underwriting principles that relate to the coverages provided by this policy and that are consistent with the approved rating plan and related documents filed with the Department of Insurance as required by existing law;

   (2) The Commissioner of Insurance finds that the exposure to potential losses will threaten our solvency or place us in a hazardous condition. A hazardous condition includes, but is not limited to, a condition in which we make claims payments for losses resulting from an earthquake that occurred within the preceding two years and that required a reduction in policyholder surplus of at least 25% for payment of those claims; or

   (3) We have:

      (a) Lost or experienced a substantial reduction in the availability or scope of reinsurance coverage; or

      (b) Experienced a substantial increase in the premium charged for reinsurance coverage of our residential property insurance policies; and

      the Commissioner has approved a plan for the nonrenewals that is fair and equitable, and that is responsive to the changes in our reinsurance position.

   c. We will not refuse to renew such coverage solely because the first Named Insured has cancelled or did not renew a policy, issued by the California Earthquake Authority, that included an earthquake policy premium surcharge.

   d. We will not refuse to renew such coverage solely because corrosive soil conditions exist on the premises. This restriction (**d.**) applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

      (1) Commercial Property Coverage Part – Causes Of Loss – Special Form; or

      (2) Farm Coverage Part – Causes Of Loss Form – Farm Property, Paragraph **D.** Covered Causes Of Loss – Special.

3. We are not required to send notice of nonrenewal in the following situations:

   a. If the transfer or renewal of a policy, without any changes in terms, conditions or rates, is between us and a member of our insurance group.

**b.** If the policy has been extended for 90 days or less, provided that notice has been given in accordance with Paragraph **C.1.**

**c.** If you have obtained replacement coverage, or if the first Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

**d.** If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

**e.** If the first Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

**f.** If we have made a written offer to the first Named Insured, in accordance with the timeframes shown in Paragraph **C.1.,** to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

© Insurance Services Office, Inc., 2012
**IL 02 70 09 12**

IL 09 35 07 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** We will not pay for loss ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

  **1.** The failure, malfunction or inadequacy of:

    **a.** Any of the following, whether belonging to any insured or to others:

      **(1)** Computer hardware, including microprocessors;

      **(2)** Computer application software;

      **(3)** Computer operating systems and related software;

      **(4)** Computer networks;

      **(5)** Microprocessors (computer chips) not part of any computer system; or

      **(6)** Any other computerized or electronic equipment or components; or

    **b.** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **A.1.a.** of this endorsement;

    due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

  **2.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **A.1.** of this endorsement.

**B.** If an excluded Cause of Loss as described in Paragraph **A.** of this endorsement results:

  **1.** In a Covered Cause of Loss under the Crime and Fidelity Coverage Part, the Commercial Inland Marine Coverage Part or the Standard Property Policy; or

  **2.** Under the Commercial Property Coverage Part:

    **a.** In a "Specified Cause of Loss", or in elevator collision resulting from mechanical breakdown, under the Causes of Loss – Special Form; or

    **b.** In a Covered Cause of Loss under the Causes Of Loss – Basic Form or the Causes Of Loss – Broad Form;

we will pay only for the loss ("loss") or damage caused by such "Specified Cause of Loss", elevator collision, or Covered Cause of Loss.

**C.** We will not pay for repair, replacement or modification of any items in Paragraphs **A.1.a.** and **A.1.b.** of this endorsement to correct any deficiencies or change any features.

IL 09 52 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

**A.  Cap On Certified Terrorism Losses**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B.  Application Of Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

POLICY NUMBER: CP0329487

**IL 09 85 01 15**

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE**

| SCHEDULE – PART I |
| --- |
| **Terrorism Premium (Certified Acts)** $3.00 |
| **This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):** |
| Certified Acts - General Liability                    $3.00 |
| |
| **Additional information, if any, concerning the terrorism premium:** |
| |

| SCHEDULE – PART II |
| --- |
| **Federal share of terrorism losses** __83__ **% Year: 20** __17__ |
| (Refer to Paragraph **B.** in this endorsement.) |
| **Federal share of terrorism losses** __82__ **% Year: 20** __18__ |
| (Refer to Paragraph **B.** in this endorsement.) |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part **II** of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

Policy No. CP0329487

## LIMITS OF INSURANCE

| | | |
|---|---|---|
| General Aggregate Limit (Other Than Products-Completed Operations) | $2,000,000 | |
| Products-Completed Operations Aggregate Limit | $2,000,000 | |
| Personal and Advertising Injury Limit | $1,000,000 | Any One Person/Org. |
| Each Occurrence Limit | $1,000,000 | |
| Damage To Premises Rented To You Limit | $100,000 | Any One Premises |
| Medical Expense Limit | $5,000 | Any One Person |

## RETROACTIVE DATE (CG 00 02 only)

This Insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" which occurs before the Retroactive Date, if any, shown here:

(Enter Date or "None" if no Retroactive Date applies)

## BUSINESS DESCRIPTION AND LOCATION OF PREMISES

Type of Business: ☐Individual    ☐Joint Venture    ☐ Partnership    ☐Limited Liability Company

☒Organization, including a Corporation, (but not including a Partnership, Joint Venture or Limited Liability Company)

Business Description: Truckmen for Hire

Location of All Premises You Own, Rent or Occupy:

```
001-001 Office and Terminal
        18938 Mermack
        Riverside
        Lake Elsinore, CA 92532
```

## CLASSIFICATION AND PREMIUM

| Loc. No | Classification | Code No | Prem Base | Rate Pr. Ops | Rate Prd/ C.O. | Advance Premium Pr. Ops | Advance Premium Prd/ C.O. |
|---|---|---|---|---|---|---|---|
| 001-001 | Nursery-Garden Products-completed operations are subject to the General Aggregate Limit TERRITORY: 012 | 15699 | 85,000 Gross Sales | 1.272 | Incl. | $108 | Incl. |
| | Truckers Products-completed operations are subject to the General Aggregate Limit TERRITORY: 012 | 99793 | 40,000 Payroll | 15.012 | Incl. | $600 | Incl. |

| | | | |
|---|---|---|---|
| | | Endorsement(s) Premium | |
| Premium shown is payable:  At inception: | | State Tax or Other | |
| Each anniversary: | | Total Policy Premium | $711 |
| | | Total Advance Premium | $711 |

**Audit Period** (if applicable): ☐Annually    ☐ Semi-annually    ☐Quarterly    ☐ Monthly

## FORMS AND ENDORSEMENTS ATTACHED:

Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue:

See Listing of Forms and Endorsements

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY DECLARATIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S) COMPLETE THE ABOVE NUMBERED POLICY.**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# EXCLUSION
**(Asbestos**)

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM**

**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**

It is agreed that this insurance does not apply to loss, demand, claim or suit arising out of or in any way related to asbestos or asbestos containing materials.

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ABSOLUTE AUTO, AIRCRAFT AND WATERCRAFT EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.  SECTION I - COVERAGES, COVERAGE A BODLILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions,** paragraph **g.** is deleted and replaced with the following:

**g.  Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of or resulting from the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft.

**B.  SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, 4. Other Insurance,** paragraph **b. Excess Insurance**, subparagraph **(1) (d)** is deleted.

All other policy terms, conditions, definitions and exclusions remain unchanged.

COMMERCIAL GENERAL LIABILITY
CG 00 01 12 07

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

  **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2006

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)** the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

## 2. Exclusions

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

© ISO Properties, Inc., 2006       ☐

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

  **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

  **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

  **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

  **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

  **e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

  **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

    **(1)** "Bodily injury" or "personal and advertising injury":

      **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

      **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

      **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

      **(d)** Arising out of his or her providing or failing to provide professional health care services.

    **(2)** "Property damage" to property:

      **(a)** Owned, occupied or used by,

      **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

    you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C;**

**b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B.**

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A;** and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

© ISO Properties, Inc., 2006

☐

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in Paragraph **a.** above;

      (2) The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph **f.** does not include that part of any contract or agreement:

      (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

      (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

         (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   (1) Equipment designed primarily for:

      (a) Snow removal;

      (b) Road maintenance, but not construction or resurfacing; or

      (c) Street cleaning;

   (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

© ISO Properties, Inc., 2006       □

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

**(2)** The providing of or failure to provide warnings or instructions.

POLICY NUMBER: CP0329487

COMMERCIAL GENERAL LIABILITY
CG 20 26 07 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name Of Additional Insured Person(s) Or Organization(s)**

```
Five A's
C/O Amelia Lua
PO Box 1525
Lake Elsinore, CA 92531
as respects to Parcel #3478080003-5
and
Alberto & Amelia Lua
PO Box 1525
Lake Elsinore, CA 92531
as respect to easement #347090019-1
See next page
```

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**A.** In the performance of your ongoing operations; or

**B.** In connection with your premises owned by or rented to you.

**Name Of Additional Insured Person(s) Or Organization(s)**

```
Alberto D & Amelia M Lua
PO Box 1525
Lake Elsinore, CA 92531
as respects to Parcel #3470900030-0 and easement #3470900040-9
```

COMMERCIAL GENERAL LIABILITY
CG 21 06 05 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

   **2. Exclusions**

   This insurance does not apply to:

   **p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

   Damages arising out of:

   **(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

   **(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

   This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

   However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

   **2. Exclusions**

   This insurance does not apply to:

   **Access Or Disclosure Of Confidential Or Personal Information**

   "Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

   This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

COMMERCIAL GENERAL LIABILITY
CG 21 71 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES; CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of an "other act of terrorism" that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the "coverage territory". However, this exclusion applies only when one or more of the following are attributed to such act:

**1.** The total of insured damage to all types of property exceeds $25,000,000 (valued in U.S. dollars). In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**2.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

  **a.** Physical injury that involves a substantial risk of death; or

  **b.** Protracted and obvious physical disfigurement; or

  **c.** Protracted loss of or impairment of the function of a bodily member or organ; or

**3.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**4.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**5.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

**b.** The act resulted in damage:

**(1)** Within the United States (including its territories and possessions and Puerto Rico); or

**(2)** Outside of the United States in the case of:

**(a)** An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

**(b)** The premises of any United States mission; and

**c.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**3.** "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".

Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

**D.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

COMMERCIAL GENERAL LIABILITY
CG 21 76 01 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF PUNITIVE DAMAGES
# RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM PUNITIVE DAMAGES**

Damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**B.** The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

COMMERCIAL GENERAL LIABILITY
CG 32 34 01 05

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

The term "spouse" is replaced by the following:

Spouse or registered domestic partner under California law.

# STAR INSURANCE COMPANY

26255 American Drive  Southfield, MI 48034-6112
Phone: 248-358-1100 or 800-482-0626

## COMMERCIAL INLAND MARINE DECLARATIONS

| POLICY NUMBER: CP0329487 | RENEWAL OF: CP0329487 |
|---|---|

| NAMED INSURED: | See form 20 15 ML |
|---|---|
| MAILING ADDRESS: | |

| PRODUCER: Interline Insurance Serv. Inc | NUMBER: 0002350 |
|---|---|

**Policy Period:  From:** 09/27/2017  **To:** 09/27/2018

This policy becomes effective and expires at 12:01 a.m. Standard Time at Your Mailing Address shown above.

| Coverage Parts that apply to this Policy: | Coverage Part Premium: |
|---|---|
| See Attached Declarations and Schedules | $239 |

**Endorsements that apply to all Coverage Parts:**

See Attached Listing of Forms and Endorsements

**LOSS PAYEE ( NAME AND ADDRESS )**

Wells Fargo Financial Leasing
Interest: Princeton Forklift #TP726015 Ref: Acct#200757055
15325 SE 30th Place Ste 100
Bellevue, WA 98007

## COMMERCIAL INLAND MARINE
## CONTRACTORS EQUIPMENT COVERAGE - DECLARATIONS

**POLICY NO.** CP0329487

**NAMED INSURED**

A. Lua Trucking, Inc.

**POLICY PERIOD**    From  09/27/2017    to   09/27/2018

**PREMIUM**

Premium for this coverage is  $239

### SCHEDULE OF COVERED PROPERTY

| Item No. | Description (Year, Manufacturer, Model, Identification Number) | Limit of Insurance |
|----------|----------------------------------------------------------------|--------------------|
| 1. | 2001 Princeton Forklift #TP726015 | $10,000 |
| 2. | 1998 Princeton Forklift #56200798 | $10,000 |
| 3. | 1993 Princeton Forklift #25051093 | $10,000 |

Total Amount of Insurance  $30,000

**DEDUCTIBLE AMOUNT**  $1,000

**FORMS APPLICABLE TO THIS COVERAGE PART**

02 07 CM (01 95) 29 56 CM (12 98)

**THESE DECLARATIONS ARE PART OF THE COMMON POLICY DECLARATIONS CONTAINING THE NAME
OF THE INSURED AND THE POLICY PERIOD.**

Original

COMMERCIAL INLAND MARINE

# CONTRACTORS' EQUIPMENT COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we" "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in **bold** have special meaning. Refer to Section F - DEFINITIONS

**A.    COVERAGE**

We will pay for **loss** to Covered Property from any of the Covered Causes of Loss.

**1.    COVERED PROPERTY**, as used in this Coverage Form, means the Contractors' Equipment usual to your business which is described in the Declarations or on a separate Schedule of Covered Property.

**2.    PROPERTY NOT COVERED**

Covered Property does not include:

**a.**    Automobiles, motor trucks, motor-cycles, aircraft or watercraft;

**b.**    Accounts, bills, currency, deeds, evidences of debt, money, notes, securities, jewelry or precious stones, plans, blueprints, designs, specification or any similar property;

**c.**    Property while waterborne, unless in transit on ferries, lighters or car floats; or property while located under water or underground, except while in transit through tunnels;

**d.**    Building materials and supplies or property which has or is intended to become a permanent part of any structure;

**e.**    Contraband property in the course of illegal transportation or trade;

**f.**    Property while underground used in connection with any mining operation.

**3.    COVERED CAUSES OF LOSS**

Covered Causes of Loss means RISKS OF DIRECT PHYSICAL **LOSS** to Covered Property except those causes of **loss** listed in the Exclusions.

**B.    EXCLUSIONS**

**1.**    We will not pay for a **loss** caused directly or indirectly by any of the following. Such **loss** is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the **loss**.

**a.    GOVERNMENTAL ACTION**

Seizure or destruction of property by order of governmental authority; but

We will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread.

**b.    NUCLEAR HAZARD**

**(1)**    Any weapon employing atomic fission or fusion; or

**(2)**    Nuclear reaction or radiation, or radioactive contamination from any other cause. But we will pay for direct **loss** caused by resulting fire.

**c.    WAR AND MILITARY ACTION**

**(1)**    War, including undeclared or civil war;

**(2)**    Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)**    Insurrection, rebellion, revolution, usurped power or action taken by governmental

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1983, 1986, 1990, 1992

authority in hinder-ing or defending against any of these.

**2.** We will not pay for **loss** caused by or resulting from the following:

**a**. Delay, loss of use, loss of market or any other consequential loss;

**b**. Unexplained disappearance;

**c**. Shortage found upon taking inventory;

**d**. Dishonest acts by you, anyone else with an interest in the property, your or their employees or authorized representatives or anyone entrusted with the property, whether or not acting alone or in collusion with other persons or occurring during the hours of employment; but

This exclusion does not apply to a carrier for hire;

**e**. Processing, maintenance, or work upon the covered property.

But we will pay for direct **loss** to covered property caused by resulting fire or explosion;

**f**. Artificially generated current creating a short circuit or other electric disturbance within an article covered under this Coverage Form;

But we will pay for direct **loss** caused by resulting fire or explosion;

This exclusion only applies to **loss** to that article in which the disturbance occurs;

**g**. The weight of a load exceeding the registered lifting or supporting capacity of any machine or equipment;

**h**. Damage to tires or tubes due and confined to blowouts, cuts, bruises or other causes inherent in the use of the equipment unless such damage is the result of other **loss** covered by this Coverage Form;

**i**. Wear and tear, any quality in the property that causes it to damage or destroy itself, hidden or latent defect, gradual deterioration, depreciation, mechanical breakdown, damage caused by insects, vermin, rodents, corrosion, rust, dampness, cold or heat.

**j**. Release, discharge, seepage, migration, dispersal, or escape of **pollutants**;

**k**. Voluntary relinquishing of title to property because of any fraudulent scheme, trick, or device.

**C. LIMITS OF INSURANCE**

The most we will pay for **loss** in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

**D. DEDUCTIBLE**

We will not pay for **loss** in any one occurrence until the amount of the adjusted **loss** before applying the applicable Limits of Insurance exceeds the Deductible shown in the Declarations. We will then pay the amount of the adjusted **loss** in excess of the Deductible, up to the applicable Limit of Insurance.

**E. CONDITIONS**

**1. COVERAGE TERRITORY**

We cover property wherever located within:

**a**. The United States of America; and

**b**. Canada.

**2. ABANDONMENT**

There can be no abandonment of any property to us.

**3. APPRAISAL**

If we and you disagree on the value of the property or the amount of **loss**, either may make written demand for an appraisal of the **loss**. In this event, each party will select a competent and impartial appraiser. The two

     Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1983, 1986, 1990, 1992

appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of **loss**. If they fail to agree, they will submit their difference to the umpire. A decision agreed to by any two will be binding. Each party will:

**1.**    Pay its chosen appraiser; and

**2.**    Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**4.**    **DUTIES IN THE EVENT OF LOSS**

You must see that the following are done in the event of **loss** to Covered Property:

**a**.    Notify the police if a law may have been broken;

**b**.    Give us prompt notice of the **loss**. Include a description of the property involved;

**c**.    As soon as possible, give us a description of how, when and where the **loss** occurred;

**d**.    Take all reasonable steps to protect the Covered Property from further damage. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses, for consideration in the settlement of the claim;

**e**.    Make no statement that will assume any obligation or admit any liability, for any **loss** for which we may be liable, without our consent;

**f**.    Permit us to inspect the property and records proving **loss**;

**g**.    If requested, permit us to question you under oath, at such times as may be reasonably required, about any matter relating to this insurance or your claim,

including your books and records. In such event, your answers must be signed;

**h**.    Send us a signed, sworn statement of loss containing the information we request to settle the claim, including such items as records and documents which may be applicable. We shall be permitted to make copies of such records and documents as we deem appropriate. You must do this within 60 days after our request. We will supply you with the necessary forms;

**i**.    Promptly send us any legal papers or notices received concerning the **loss**;

**j**.    Cooperate with us in the investigation or settlement of the claim.

**5.**    **INSURANCE UNDER TWO OR MORE COVERAGES**

If two or more of this policy's coverages apply to the same **loss**, we will not pay more than the actual amount of the **loss**.

**6.**    **LOSS PAYMENT**

We will pay or make good any **loss** covered under this Coverage Form within 30 days after:

**a**.    We reach agreement with you;

**b**.    The entry of final judgment; or

**c**.    The filing of an appraisal award.

We will not be liable for any part of a **loss** that has been paid or made good by others.

**7.**    **OTHER INSURANCE**

If you have other insurance covering the same **loss** as the insurance under this Coverage Form, we will pay only the excess over what you should have received from the other insurance. We will pay the excess whether you can collect on the other insurance or not.

**8.**    **PAIR, SETS OR PARTS**

**a.** In case of **loss** to any part of a pair or set we may:

**(1)** Repair or replace any part to restore the pair or set to its value before the **loss**; or

**(2)** Pay the difference between the value of the pair or set before and after the **loss**.

**b.** In case of **loss** to any part of Covered Property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

**9.  PRIVILEGE TO ADJUST WITH OWNER**

In the event of **loss** involving property of others in your care, custody or control, we have the right to:

**a.** Settle the **loss** with the owners of the property. A receipt for payment from the owners of that property will satisfy any claim of yours;

**b.** Provide a defense for legal proceedings brought against you. If provided, the expense of this defense will be at our cost and will not reduce the applicable Limit of Insurance under this insurance.

**10.  RECOVERIES**

Any recovery or salvage on a **loss** will accrue entirely to our benefit until the sum paid by us has been made up.

**11.  REINSTATEMENT OF LIMIT AFTER LOSS**

The Limit of Insurance will not be reduced by the payment of any claim, except for total **loss** of a scheduled item, in which event we will refund the unearned premium on that item.

**12.  TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this insurance has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything

necessary to secure our rights and must do nothing after **loss** to impair them.

**13.  CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Policy is void in any case of fraud, intentional concealment or misrepresentation of a material fact, by you or any other insured, at any time, concerning:

**a.** This Policy;

**b.** The Covered Property;

**c.** Your interest in the Covered Property; or

**d.** A claim under this Policy.

**14.  LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Policy unless:

**a.** There has been full compliance with all the terms of this Policy; and

**b.** The action is brought within two years from the date of loss, after you first have knowledge of the **loss**.

**15.  NO BENEFIT TO BAILEE**

No person or organization, other than you, having custody of Covered Property, will benefit from this insurance.

**16.  POLICY PERIOD**

We cover **loss** commencing during the policy period shown in the Declarations.

**17.  VALUATION**

The value of the property covered hereunder will be the actual cash value at the time of loss, with the exception of items listed in item 8. above.

**18.  CHANGES**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be

amended or waived only by endorsement issued by us and made a part of this policy.

### 19. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

### 20. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

**a.** Make inspections and surveys at any time;

**b.** Give you reports on the conditions we find; and

**c.** Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. We do not warrant that conditions:

**(1)** Are safe or healthful; or

**(2)** Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

### 21. PREMIUMS

The first Named Insured shown in the Declarations:

**a.** Is responsible for the payment of all premiums; and

**b.** Will be the payee for any return premiums we pay.

### 22. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

### 23. CANCELLATION

You may cancel this policy by providing a written notice to us specifying the date you wish coverage to cease.

We may cancel this policy providing written notice at least 10 days prior to the cancellation taking effect. This written notice will specify the date of cancellation. This notice will be sent to your last known mailing address.

Your return premium, if any, will be calculated on a pro rata basis if we cancel. If you cancel, return premium, if any, will be calculated on a short rate basis.

### 24. NONRENEWAL

We may elect not to renew this policy by mailing or delivering to you, at your last known address, written notice of nonrenewal stating the actual reason for nonrenewal at least 30 days prior to the effective date of the nonrenewal.

## F. ADDITIONAL COVERAGES

### 1. ADDITIONAL ACQUIRED PROPERTY

If during the policy period you acquire additional property of a type already covered by this form, we will cover such property for up to 30 days. The most we will pay in a **loss** is the lesser of:

**a.** 25% of the total Limit of Insurance shown in the Declarations for that type of property; or

**b**.        $25,000.

You will report such property within 30 days from the date acquired and will pay any additional premium due. If you do not report such property, coverage will cease automatically 30 days after the date the property is acquired.

**2.    RENTAL REIMBURSEMENT**

If, during the policy period, you incur a **loss** caused by a covered cause of loss to covered property, we will reimburse you for costs to rent similar equipment while your equipment is inoperable. The most we will reimburse you is $2,500 in addition to whatever limit appears on the policy for rental reimbursement.

This rental reimbursement coverage may continue beyond expiration date, provided the covered **loss** occurred before the expiration date.

**3.    DEBRIS REMOVAL**

We will pay the cost to remove the debris resulting from a covered cause of loss. This coverage does not apply to the following costs:

**a**.    Cost caused by extracting **pollutants** from land or water;

**b**.    Cost to remove, replace, or restore polluted land or water.

This additional coverage is limited to 25 percent of the amount we pay for the direct loss. Our total **loss** for direct damage and debris removal combined shall not exceed the limit shown in the Declarations for the damaged property.

Notwithstanding the above, we will pay up to an additional $5,000 when the debris removal expense caused by a covered **loss** exceeds 25 percent of the amount we pay for direct loss or when combined cost of debris removal and direct damage exceeds the limit shown in the Declarations for the damaged property.

**4.    EMERGENCY REMOVAL**

We will pay for **loss** to covered property while it is being moved or while temporarily stored at another location to prevent a **loss** caused by a covered cause of loss. We will pay for any direct physical **loss** caused by a cause of loss that is not excluded. This coverage will apply for up to 10 days after the date of the covered **loss** occurs, but this coverage does not extend beyond the policy expiration date stated in the Declarations.

**5.    FIRE DEPARTMENT SERVICE CHARGES**

We will pay up to $1,000 for your costs to reimburse any state or local fire department for service calls caused by a covered cause of **loss,** provided you are required by ordinance or contract to make such a reimbursement.

No deductible applies to this coverage. This limit of insurance is in addition to the limits stated in the Declarations.

**6.    POLLUTANT CLEANUP AND REMOVAL**

We will pay your cost to extract **pollutants** from land or water if the leakage, discharge, migration, release, or escape of the **pollutants** is caused by a covered cause of loss that occurs during the policy period. The costs to be paid must be reported to us within 120 days from the date of the covered **loss**.

We will not pay for monitoring, testing, evaluating, observing, or recording the level or effects of **pollutants**.

The most we will pay for this coverage is $10,000 per location for all costs associated with a covered cause of loss during this policy period. This limit is in addition to the limits shown in the Declarations.

**G.    DEFINITIONS**

**1.    Loss** means accidental loss or damage.

**2**.    **Pollutants** means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis,

chemicals and waste.  Waste includes mate-
rials to be recycled, reconditioned, or reclaimed.
**Pollutants** also means electromagnetic (visible
or invisible) or sound emission.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1983, 1986, 1990, 1992

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# VALUATION CHANGES

This endorsement modifies insurance provided under the following:

**CONTRACTORS EQUIPMENT COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

The VALUATION paragraph in CONDITIONS is modified as indicated by an "X" in the applicable box shown below:

☒  REPLACEMENT COST.

Wherever the words Actual Cash Value occur in the form to which this endorsement is attached, they are replaced by **replacement cost** ("replacement cost").

**Replacement cost** ("replacement cost") means the amount we will pay shall not exceed the smallest of the following:

1.  The Limit of Insurance which applies to the item(s) involved in the **loss** ("loss"); or

2.  The cost to repair or replace the damaged or destroyed Covered Property, or any part thereof with materials of like kind and quality, without deduction for depreciation.

You may substitute property of a different kind or quality, but we will not pay more than what it would cost to replace the damaged or destroyed property with substantially identical property.

We will not make any payment under this form until the property involved in the **loss** ("loss") is actually repaired or replaced by you as soon as reasonably possible after the **loss** ("loss") or damage. In the event of **loss** ("loss") the value of property will be determined as of the time of **loss** ("loss").

☐ STATED AMOUNT.

Covered Property (excluding property included in blanket limits of insurance) shall be valued at the smallest of the following amounts:

1.  The actual cash value of the Covered Property at the time of the **loss** ("loss");

2.  The cost of repairing or replacing the Covered Property with property of like kind and quality; or

3.  The amount shown in the Schedule.

All other terms and conditions remain unchanged.

INLAND MARINE

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LOSS PAYABLE ENDORSEMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL INLAND MARINE COVERAGE PART

In addition to the policy terms and conditions contained within the Commercial Inland Marine Coverage Part, the following conditions apply to described property as indicated on the Commercial Inland Marine Declarations, or Schedule attached.

### LOSS PAYABLE

Any loss to described property shall be adjusted with you, and shall be payable jointly to you and the Loss Payee described on the Commercial Inland Marine Declarations, as the respective interests may appear.

### LENDER'S LOSS PAYABLE

If the Loss Payee described on the Commercial Inland Marine Declarations is your lender, any loss to described property shall be adjusted with you, and shall be payable jointly to you and the Loss Payee, as the respective interests may appear.

The insurance and all of the terms of this Coverage Part continues in effect for the Loss Payee even when your insurance may be void for your failure to comply with coverage terms, or when a claim is denied you because of your acts, provided the Loss Payee:

1.  Pays any premium due under this Coverage Part at our request, if you have failed to do so;

2.  Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

3.  Has notified us of any change in ownership or substantial increase in risk.

If we pay the Loss Payee for a loss where your insurance may be void for your failure to comply with coverage terms, or when a claim is denied you because of your acts, the Loss Payee's right to collect that portion of the debt from you then belongs to us to the extent of the amount that we pay for the loss. This, however, does not affect the Loss Payee's right to collect the remainder of the debt you owe. The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired. At our option, we may pay the full amount of the debt plus any accrued interest to the Loss Payee. In this event, you will pay your remaining debt to us.

If we cancel or chose not to renew the insurance modified by this endorsement, we will give notice to the Loss Payee under the same terms and conditions as the cancellation or nonrenewal notice provided to you.

### CONTRACT OF SALE

If the Loss Payee described on the Commercial Inland Marine Declarations is a person or organization having a contract with you for the sale of described property, any loss to described property shall be adjusted with you, and shall be payable jointly to you and the Loss Payee, as the respective interests may appear. When covered property is the subject of a contract of sale, the word "you" in this insurance includes the Loss Payee.

All other policy terms, conditions, definitions and exclusions remain the same.

STAR INSURANCE COMPANY – A Stock Company

*In Witness Whereof, we have caused this policy to be executed and attested, and if required by state law, this policy shall not be valid unless countersigned by our authorized representative* (void in Arizona and Virginia).

_____
**Secretary of Star Insurance Company**

_____
**President of Star Insurance Company**

**0915 IL 1116**                                                                 **Page 1 of 1**